IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **MICHAEL NELSON,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | |
| **KRISTI NOEM**, Secretary of Homeland | § | |
| Security, *in her official capacity*; **U.S.** | § | Civil Action No: 2:26-cv-00054 |
| **DEPARTMENT OF HOMELAND** | § | |
| **SECURITY; JOSEPH EDLOW**, Director of | § | **COMPLAINT FOR WRIT OF** |
| U.S. Citizenship and Immigration Services, | § | **MANDAMUS, RELIEF UNDER** |
| *in his official capacity*; **TERRI ROBINSON**, | § | **THE ADMINISTRATIVE** |
| Director of the National Benefits Center of | § | **PROCEDURE ACT,** |
| U.S. Citizenship and Immigration Services, | § | **DECLARATORY JUDGMENT** |
| *in her official capacity*; **U.S. CITIZENSHIP** | § | **AND INJUNCTIVE RELIEF** |
| **AND IMMIGRATION SERVICES;** | § | |
| **PAMELA BONDI**, Attorney General of the | § | |
| United States, *in her official capacity*; and | § | |
| **U.S. DEPARTMENT OF JUSTICE.** | § | |
| | § | |
| *Defendants.* | § | |
| | § | |

## I. INTRODUCTION

1.      This action arises from the approval of a marriage-based immigrant petition that Plaintiff now alleges was procured through fraud in violation of federal law. Plaintiff Michael Nelson, a United States citizen, filed a Form I-130 petition on behalf of his spouse, thereby sponsoring her for lawful permanent residence. U.S. Citizenship and Immigration Services ("USCIS") approved the petition and granted the beneficiary

conditional permanent resident status. Only after that approval did Plaintiff discover and correlate evidence indicating that the marriage had been entered into for the purpose of evading the immigration laws.

2.      As a condition of that approval, Plaintiff executed Form I-864, Affidavit of Support Under Section 213A of the INA, a legally binding and judicially enforceable contract with the United States that obligates him to maintain the sponsored immigrant at 125 percent of the federal poverty level until a statutory termination event occurs. The continued legal effect of the challenged approval sustains that obligation and exposes Plaintiff to ongoing financial liability arising directly from the government approval he seeks to place before the Board of Immigration Appeals ("BIA") for independent review and correction, if warranted.

3.      Upon discovering and correlating that evidence, Plaintiff retained counsel and invoked the independent administrative review mechanism available to a petitioner in this posture: a Form EOIR-29 appeal to the BIA. Because the approval had already issued and the regulatory filing period had expired before the concealed evidence could reasonably have been uncovered, Plaintiff expressly invoked equitable tolling in his appeal.

4.      The regulatory framework governing such appeals is a unique creature of administrative law. Although the BIA is the adjudicatory body with appellate authority, the appeal must first be filed with and processed by DHS. Under 8 C.F.R. § 1003.5(b), DHS acts as a temporary custodian of the appeal and "shall" review it and, absent favorable action within forty-five days, "shall" immediately forward the record of proceeding to the BIA for independent review.

5.      This is an action to compel DHS to perform that mandatory, ministerial duty and to prevent the application of unlawful legal standards that will govern Plaintiff's

pending appeal. Federal regulation requires transmission of the record within forty-five days. Defendants have refused to do so. More than 200 days have now elapsed.

6.      This is not harmless delay: it blocks the independent administrative review available to enforce INA § 204(c) and preserves the legal effects of an approval Plaintiff alleges is barred by statute, while he remains bound to a sponsorship he alleges was procured through fraud and sustained without access to the administrative review process guaranteed by regulation.

7.      Plaintiff seeks narrowly tailored relief to restore lawful process: (a) mandamus and APA relief compelling DHS to transmit the record as required by 8 C.F.R. § 1003.5(b); and (b) declaratory, injunctive, and APA relief prohibiting Defendants from applying extra-textual limitations and unlawful evidentiary burdens that narrow INA § 204(c) in reviewing, transmitting, or adjudicating Plaintiff's pending administrative appeal.

8.      The declaratory claims are ripe because the challenged legal rules are already operative at the agency stage that precedes Board review. USCIS's transmission-stage review under 8 C.F.R. § 1003.5(b) requires the agency to determine whether it will process and forward the appeal, including whether it will treat the appeal as untimely notwithstanding equitable tolling and what legal and evidentiary standards govern the asserted fraud bar. Absent clarification now, the agency's gatekeeping application of these standards may foreclose or materially shape Board review before it occurs.

## II.  PARTIES

9.      Plaintiff **Michael Nelson** ("Plaintiff") is a United States citizen residing in Nueces County, Texas. He filed a Form I-130, Petition for Alien Relative, that was approved by USCIS. After discovering evidence triggering a statutory bar to approval under INA § 204(c), Plaintiff filed a Form EOIR-29 appeal pursuant to 8 C.F.R. § 1003.3(a)(2). This

action seeks to compel USCIS to perform its nondiscretionary duty under 8 C.F.R. §
1003.5(b) to act on and forward that appeal, which remains unlawfully withheld by
USCIS.

10.     Defendant **Kristi Noem** is the Secretary of the U.S. Department of Homeland
Security. In this capacity, she has authority over the administration and enforcement of
the Immigration and Nationality Act ("INA") and all component agencies within DHS,
including USCIS. She is sued in her official capacity.

11.     Defendant **U.S. Department of Homeland Security** ("DHS") is a cabinet-level
department of the Executive Branch of the United States Government. DHS is an
agency within the meaning of 5 U.S.C. § 551(1). USCIS is a component of DHS that has
authority over the receipt, docketing, and processing of appeals of DHS decisions to the
Board of Immigration Appeals via Form EOIR-29.

12.     Defendant **Joseph Edlow** is the Director of U.S. Citizenship and Immigration
Services, a component agency of the DHS responsible for implementing the
immigration laws of the United States. In that capacity, he exercises supervisory
authority over the receipt, docketing, and processing of administrative appeals filed on
Form EOIR-29, including the agency's obligation under 8 C.F.R. § 1003.5(b) to decide
or forward such appeals to the Board of Immigration Appeals within forty-five (45)
days. He is sued in his official capacity.

13.     Defendant **Terri Robinson** is the Director of the U.S. Citizenship and
Immigration Services, National Benefits Center, which issued the receipt for Plaintiff's
Form EOIR-29 and therefore has administrative control over the record of proceeding
for Plaintiff's I-130 and the Form EOIR-29 appeal. Defendant Robinson is the official
with the ministerial duty to process and forward the appeal to the BIA under 8 C.F.R. §
1003.5(b). She is sued in her official capacity.

14.     Defendant **U.S. Citizenship and Immigration Services** ("USCIS") is the component agency of DHS responsible for the adjudication of immigration benefits and the processing of appeals filed on Form EOIR-29. USCIS has physical custody of Plaintiff's administrative file and is the agency charged with the ministerial duty to forward the record of proceeding to the Board of Immigration Appeals.

15.     Defendant **U.S. Department of Justice** ("DOJ") is a cabinet-level department of the Executive Branch of the United States Government and an agency within the meaning of 5 U.S.C. § 551(1). The Executive Office for Immigration Review ("EOIR") is a component of the DOJ. The Board of Immigration Appeals is the adjudicative body within EOIR that exercises administrative appellate authority over DHS decisions pursuant to 8 C.F.R. § 1003.1(b).

16.     Defendant **Pamela Bondi** is the Attorney General of the United States and head of the DOJ. In that capacity, she exercises supervisory authority over EOIR and the BIA, including the promulgation and enforcement of regulations governing the BIA's appellate jurisdiction. She is sued in her official capacity.

## III.  JURISDICTION & VENUE

17.     **Subject-Matter Jurisdiction**: This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including the Immigration and Nationality Act ("INA"), the Administrative Procedure Act ("APA"), and implementing federal regulations.

18.     **Mandamus Jurisdiction**: This Court has jurisdiction under 28 U.S.C. § 1361 to compel officers and agencies of the United States to perform duties owed to Plaintiff. Defendants have a clear, ministerial, and nondiscretionary duty under 8 C.F.R. § 1003.5(b) to review a properly filed Form EOIR-29 appeal and, absent favorable action within forty-five (45) days, to immediately forward the record of proceeding to the BIA.

19.    **Waiver of Sovereign Immunity**: The United States has waived sovereign immunity for this action under 5 U.S.C. § 702, which authorizes judicial review of agency action unlawfully withheld or unreasonably delayed within the meaning of 5 U.S.C. § 702 and permits relief other than money damages.

20.    **Declaratory Relief**: This Court is authorized to issue declaratory judgments under 28 U.S.C. §§ 2201–2202 to resolve the actual and justiciable controversies presented regarding the scope of agency authority, the legality of governing standards, and the procedural rules applicable to Plaintiff's administrative appeal.

21.    **Injunctive Relief**: The Court is authorized to grant injunctive relief as necessary and appropriate to remedy unlawful agency action and to effectuate declaratory relief, including under 5 U.S.C. § 706, 28 U.S.C. §§ 2201–2202, and the Court's traditional equitable powers.

22.    **No Jurisdictional Bar**: This action is not barred by 8 U.S.C. § 1252(a)(2)(B) or any other limitation on judicial review. Plaintiff does not challenge a discretionary adjudication, but instead seeks to compel compliance with mandatory regulatory duties and to obtain resolution of pure questions of law, including whether agency interpretations and procedures exceed statutory or regulatory authority.

23.    **Venue**: Venue is proper in this District under 28 U.S.C. § 1391(e)(1)(C) because Defendants are officers and agencies of the United States acting in their official capacities, and Plaintiff resides in Nueces County, Texas, which lies within the Corpus Christi Division of the Southern District of Texas. No real property is involved in this action.

## IV.  FACTUAL ALLEGATIONS

### A.  THE COLLAPSE OF MARRIAGE FRAUD ENFORCEMENT
*The Statutory Mandate and Oversight*

24.     This case arises from a broader and documented national marriage fraud crisis. Marriage-based immigration constitutes the single largest category of lawful permanent residence in the United States. Yet enforcement of Congress's antifraud protections has steadily deteriorated. This issue is the subject of recent congressional oversight. *See Restoring Integrity and Security to the Visa Process: Hearing Before the Subcomm. on Immigr. Integrity, Sec., & Enf't of the H. Comm. on the Judiciary*, 119th Cong. (2025) (written testimony of Cody M. Brown, Managing Attorney, Codias Law).

25.     To combat immigration marriage fraud, Congress enacted the Immigration Marriage Fraud Amendments of 1986 ("IMFA"), Pub. L. No. 99-639, 100 Stat. 3537 (1986). IMFA created a multilayered antifraud regime, including but not limited to: (a) mandatory, non-waivable bar on approval of visa petitions involving marriage fraud under INA § 204(c); (b) a two-year conditional permanent residence regime designed to facilitate post-admission scrutiny; (c) a standalone federal felony offense for marriage fraud codified at 8 U.S.C. § 1325(c); and (d) expressly reduced evidentiary burdens for establishing marriage fraud in removal proceedings.

26.     The centerpiece of the antifraud regime is INA § 204(c), which provides that "no petition shall be approved" where the beneficiary entered into, attempted to enter into, or conspired to enter into a marriage "for the purpose of evading the immigration laws." The statute is mandatory, non-discretionary, and does not permit waiver.

*Regulatory Narrowing of the Statutory Bar*

27.     Despite this clear mandate, the Executive Branch altered the regulatory framework in ways that narrowed the practical application of § 204(c) without

- 7 -

statutory authorization. When Congress enacted the IMFA in 1986, it did not impose a heightened evidentiary standard for marriage fraud; in fact, it *reduced* the standard in removal proceedings. Consistent with the statute, the INS's initial 1988 implementing regulations likewise made no mention of a heightened standard, adhering to the default "preponderance of the evidence" standard applicable to civil administrative proceedings. *See Marriage Fraud Amendments Regulations*, 53 Fed. Reg. 30018 (Aug. 10, 1988).

28.    However, in 1992—without any Congressional amendment to INA § 204(c)—the agency abruptly amended the regulations to impose a "substantial and probative evidence" standard for marriage fraud findings. *See* 57 Fed. Reg. 41053 (Sep. 9, 1992). The agency justified this departure by citing thirty-five commenters and the Board's decision in *Matter of Tawfik*, 20 I&N Dec. 166 (BIA 1990). However, reliance on *Tawfik* was legally baseless. That decision invented the "substantial and probative" standard by citing pre-IMFA cases like *Matter of Agdinaoay*, 16 I&N Dec. 545 (BIA 1978) and *Matter of La Grotta*, 14 I&N Dec. 110 (BIA 1972). Neither case established a heightened standard; *La Grotta* merely described the factual record in that specific case as containing "substantial evidence." By bootstrapping a descriptive phrase from a 1972 case into a binding legal standard in 1992, the agency effectively rewrote the IMFA to make it harder to prove fraud than Congress intended.

29.    This invented standard—now set forth at 8 C.F.R. § 204.2(a)(1)(ii) and reinforced by the BIA precedent decision in *Matter of P. Singh*, 27 I&N Dec. 598, 601 (BIA 2019) which binds USCIS's initial review of Plaintiff's appeal—acts as a regulatory shield for fraud. By administratively raising the standard of proof beyond the preponderance standard prescribed by the APA and the Supreme Court, the agency has made it more difficult to enforce the mandatory bar. *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 389-90 (1983); *Steadman v. SEC*, 450 U.S. 91, 95 (1981).

*DOJ's Near-Total Abandonment of Criminal Prosecution*

**30.**     Despite codifying marriage fraud as a federal felony, criminal enforcement has also virtually disappeared. Bureau of Justice Statistics data reflect that only sixteen prosecutions have been filed under 8 U.S.C. § 1325(c) in recent reporting periods, with only seven cases closed. *See* U.S. Dep't of Justice, Bureau of Justice Statistics, *Federal Criminal Case Processing Statistics (FCCPS)*, https://fccps.bjs.ojp.gov/. DOJ does not even meaningfully track marriage-fraud prosecutions in its annual *Prosecuting Immigration Crimes Report*.

**31.**     Even after an explicit April 11, 2017 directive from the Attorney General instructing U.S. Attorneys to pursue felony marriage-fraud cases, government data shows that DOJ filed no cases under § 1325(c) between 2017 and 2020. *See id.* (FCCPS Data 2017–2020); *see also* U.S. Dep't of Justice, *Memorandum on Renewed Commitment to Criminal Immigration Enforcement* (Apr. 11, 2017).

*ICE's Retrenchment from Individual Benefit Fraud Investigations*

**32.**     Immigration and Customs Enforcement—through Homeland Security Investigations ("HSI")—bears primary responsibility for investigating immigration benefit fraud. Yet victims reporting documentary evidence of marriage fraud are routinely redirected to USCIS and informed that ICE does not pursue individual cases. In some jurisdictions, investigative capacity for benefit fraud has been effectively eliminated. *See Restoring Integrity Hearing* (Brown Testimony) at 62.

*USCIS's Structural Vulnerabilities*

**33.**     In the absence of meaningful criminal or administrative enforcement by ICE, USCIS has become the de facto frontline guardian against marriage fraud. Yet the U.S. Government Accountability Office found as recently as 2022 that USCIS lacks even a basic antifraud strategy, nearly 20 years after DHS was created. *See* U.S. Gov't

Accountability Office, *Immigration Benefits: Actions Needed to Address Vulnerabilities in USCIS's Antifraud Efforts*, GAO-22-105328, at 44 (2022).

34.    USCIS conceals the extent of this failure by refusing to publish regular and comprehensive fraud denial statistics, forcing private citizens to file Freedom of Information Act ("FOIA") requests to compel disclosure. When finally produced, the agency's own internal data (covering 2016–2021) revealed a statistical impossibility: for the five principal marriage-based immigration forms, the fraud denial rate—rounded to the nearest whole number—was 0%. *See* USCIS, *Denied-Fraud By Fiscal Year and Quarter: Fiscal Years 2016–2021* (through Mar. 2021) (FOIA response, released 2021).

35.    Despite IMFA's requirement for rigorous marriage-based adjudications, in recent years USCIS routinely waived interviews at a reported rate of 98 percent, removing arguably the most important opportunity to detect fraudulent marriages before lawful permanent residence is conferred. *See* USCIS, *Policy Alert PA-2022-13: Interview Waiver Criteria for Family-Based Conditional Permanent Residents* (Apr. 7, 2022); *Restoring Integrity Hearing* (Brown Testimony) at 64.

36.    Even when fraud is *admitted* by an alien, USCIS routinely grants waivers for fraud and misrepresentation (Form I-601) at extraordinarily high rates. As of Fiscal Year 2024, government data indicates that USCIS approved approximately 80% of all waivers—across all form types—including those involving fraud and misrepresentations. USCIS, *All USCIS Application and Petition Form Types (Fiscal Year 2024, Quarter 4)* (Dec. 18, 2024). USCIS makes it impossible to determine how many fraud-based waivers were granted or denied, as USCIS does not disaggregate its data by waiver type or inadmissibility ground. Nor does it distinguish Form I-601 adjudications from other waivers (such as Forms I-191, I-192, I-212, I-602, and I-612), obscuring meaningful oversight. *Id.*

37.    USCIS fails to publicize any mechanisms to assist or protect U.S. citizen victims of immigration marriage fraud, except a rudimentary online tip form that the U.S. Government Accountability Office (GAO) found rarely results in meaningful action. U.S. GOV'T ACCOUNTABILITY OFFICE, *U.S. Citizenship and Immigration Services: Additional Actions Needed to Manage Fraud Risks*, GAO-22-105328, at 19 (2022), https://www.gao.gov/assets/gao-22-105328.pdf. As the GAO reported, the tipline is "the source of thousands of benefit fraud leads each year; however, relatively few of those leads have resulted in benefit fraud cases." *Id.*

*Administrative Appeal as the Final Firewall*

38.    In the absence of meaningful antifraud enforcement by DOJ and DHS, the administrative appeal (Form EOIR-29) to the Board of Immigration Appeals ("BIA") remains the only mechanism for independent oversight available to a victim to challenge a fraudulent approval and enforce the mandatory bar of INA § 204(c).

B. PLAINTIFF'S ADMINISTRATIVE APPEAL
*Plaintiff's Petition and Approval*

39.    On or about September 11, 2022, Plaintiff filed a Form I-130, Petition for Alien Relative (Receipt No. IOE9238090888), on behalf of his Brazilian spouse, Jhoelayne Paixao ("Beneficiary"), believing the marriage to be bona fide.

40.    On or about May 10, 2023, USCIS approved the petition, along with the Beneficiary's concurrently filed Form I-485 application, granting her conditional permanent residence. A true and correct copy of the Form I-130 Approval Notice (IOE9238090888) is attached as **Exhibit A**. Notably, USCIS approved the petition based on a minimal documentary record and without conducting an in-person interview.

*Post-Approval Discovery of Evidence Implicating INA § 204(c)*

**41.**    Subsequent to the approval, Plaintiff discovered and correlated extensive evidence indicating that the Beneficiary had entered into the marriage for the purpose of evading the immigration laws—a felony under 8 U.S.C. § 1325(c) and a mandatory bar to petition approval under INA § 204(c). This evidence, which was submitted to the agency with the administrative appeal, includes:

  a.  **Concealment of Prior Marriage**: Documentation that Beneficiary was still legally married to another individual when she solicited marriage from Plaintiff.

  b.  **Financial Exploitation**: Records of unauthorized withdrawals from Plaintiff's credit cards and Health Savings Account, and the creation of fraudulent CashApp accounts in his name.

  c.  **Public Benefit Fraud**: Evidence that the Beneficiary committed Medicaid fraud by obtaining approximately $3,447 in benefits to which she was not entitled, utilizing Plaintiff's insurance information.

  d.  **Fabricated Abuse Allegations**: Evidence that the Beneficiary filed false abuse allegations in Texas state court. After a full evidentiary hearing, the State Court denied her petition for a protective order, rejecting the claims as unsubstantiated. This conduct is consistent with an attempt to manufacture a "battered spouse" waiver (Form I-751)—a tactic designed to bypass the joint-filing requirement (an antifraud safeguard) and secure unconditional permanent residence without Plaintiff's consent.

  e.  **Lack of Marital Intent**: Admissions by the Beneficiary following separation that the Plaintiff was "not her type," and evidence of her continued affectionate ties with her former spouse throughout the marriage.

42.     Plaintiff alleges that this evidence was actively concealed from him by the Beneficiary and could not reasonably have been discovered earlier. Plaintiff does not seek adjudication of the factual merits of these allegations by this Court. Rather, the existence and seriousness of this evidence form the basis for Plaintiff's administrative appeal and the legal controversies presented in this action.

*Plaintiff's Diligence and the Basis for Equitable Tolling*

43.     Upon discovering the fraud, Plaintiff exercised reasonable diligence in pursuing his rights. Rather than filing a premature appeal based on speculation, Plaintiff retained immigration counsel to conduct a comprehensive fraud investigation. Plaintiff further exercised diligence by initiating state court annulment proceedings to compel discovery of concealed evidence.

44.     On June 16, 2025—immediately following the conclusion of the fraud investigation—Plaintiff filed Form EOIR-29, Notice of Appeal, directly with USCIS, pursuant to 8 C.F.R. § 1003.3(a)(2). A true and correct copy of the EOIR-29 Receipt Notice (Receipt No. MSC2526650017) is attached as **Exhibit B**.

45.     In his appeal, Plaintiff expressly invoked the doctrine of Equitable Tolling. He demonstrated that extraordinary circumstances—specifically, the Beneficiary's active concealment of her fraudulent intent—prevented earlier filing, and that he acted with diligently in pursuing his rights. *See Matter of Morales-Morales*, 28 I&N Dec. 708 (BIA 2023).

*The Agency's Unlawful Delay*

46.     On July 15, 2025, the USCIS National Benefits Center issued a receipt notice for Plaintiff's EOIR-29 (Receipt No. MSC2526650017).

47.     Upon inspection of the Receipt Notice, Plaintiff discovered that DHS had erroneously listed the Beneficiary's name in the "Petitioner" field, rather than Plaintiff's own name. This error reflects an automated system designed primarily to process benefits for intending immigrants, often at the expense of the U.S. citizen petitioners who are the actual parties in interest.

48.     Under 8 C.F.R. § 1003.5(b), USCIS acts as a temporary custodian of the appeal. The regulation imposes a strict mandatory duty: the DHS officer "shall" review the appeal and, if they do not take favorable action within 45 days, "the record of proceeding shall be immediately forwarded to the Board."

49.     The 45-day regulatory deadline expired in August 2025. USCIS has failed to act on either option. It has not reopened the case, nor has it forwarded the record to the BIA.

50.     On or about September 22, 2025, Plaintiff and counsel participated in a recorded call with the USCIS Contact Center. The USCIS representative confirmed that the case remained at the service center and that they lacked any record indicating forwarding to the BIA. Although a service request was opened, no explanation has been provided for the continuing inaction.

51.     As of the date of this filing, over 200 days have elapsed since USCIS received Plaintiff's appeal. The appeal remains in administrative limbo.

*The Executive's Renewed Mandate and Agency Inaction*

52.     USCIS's failure to forward this file to the BIA directly contravenes its own stated priorities. Defendant Edlow has publicly declared an "all-out war on immigration fraud," pledging to "relentlessly pursue everyone involved in undermining the integrity of our immigration system and laws." *See* U.S. CITIZENSHIP & IMMIGR. SERVS., *USCIS*

*Announces Results of Operation Twin Shield, a Large-Scale Immigration Fraud Investigation* (News Release) (Sept. 30, 2025), https://www.uscis.gov/newsroom/news-releases/uscis-announces-results-of-operation-twin-shield-a-large-scale-immigration-fraud-investigation.

53.    USCIS's failure to forward the file also is directly inhibiting the BIA from operationalizing recent antifraud initiatives announced by EOIR. On February 5, 2025, the Director of EOIR issued Policy Memorandum 25-19, titled "Reviving and Strengthening the Anti-Fraud Program." This directive explicitly acknowledged that the agency's anti-fraud capabilities had been "effectively dismantled" and ordered an agency-wide return to "rooting out" fraud.

54.    This dual mandate—from both DOJ and DHS leadership—makes the failure of subordinate USCIS officials to process this fraud-based appeal even more indefensible. The delay serves only to protect the fraudulent beneficiary, directly undermining the stated priorities of both agencies. This obstruction directly contravenes the Executive Branch's stated policy of restoring integrity to the immigration system. *See* Exec. Order No. 14,159, *Protecting the American People Against Invasion*, 90 Fed. Reg. 8,443 (Jan. 29, 2025).

*Ongoing Harm to Plaintiff*

55.    DHS's failure to forward the appeal causes ongoing injury to Plaintiff. The fraudulent approval of the Form I-130 petition remains operative in agency systems despite the pending appeal.

56.    Most critically, Plaintiff remains liable under Form I-864, Affidavit of Support, a binding contract that subjects him to financial liability for the spouse who defrauded him—potentially indefinitely, with damages reaching hundreds of thousands of dollars.

Plaintiff has no other adequate remedy to compel agency action absent intervention by this Court.

## V.  CAUSES OF ACTION

### COUNT I – MANDAMUS
*Failure to Perform a Nondiscretionary Duty*

**57.**     Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

**58.**     Defendant USCIS has a clear, ministerial, and nondiscretionary duty under 8 C.F.R. § 1003.5(b), upon receipt of a properly filed Form EOIR-29 appeal, to review the appeal and, absent favorable action within forty-five (45) days, to immediately forward the record of proceeding to the BIA.

**59.**     Plaintiff properly filed a Form EOIR-29 appeal and fully complied with all regulatory requirements necessary to invoke the administrative appellate process.

**60.**     USCIS has failed to take favorable action on the appeal and has failed to forward the record of proceeding to the BIA within the time prescribed by regulation.

**61.**     USCIS's failure to act constitutes a refusal to perform a mandatory duty imposed by law.

**62.**     Plaintiff has no other adequate remedy to compel USCIS to perform this nondiscretionary duty.

**63.**     Plaintiff is therefore entitled to a writ of mandamus under 28 U.S.C. § 1361 compelling USCIS to immediately forward the record of proceeding to the BIA.

## COUNT II – ADMINISTRATIVE PROCEDURES ACT
*Unlawfully Withheld Agency Action*

**64.**    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

**65.**    The APA requires agencies to proceed to conclude matters presented to them within a reasonable time, 5 U.S.C. § 555(b), and authorizes courts to compel agency action that has been unlawfully withheld or unreasonably delayed, 5 U.S.C. § 706(1).

**66.**    Upon receipt of Plaintiff's properly filed Form EOIR-29 appeal, USCIS was required by regulation to take action within a defined timeframe—either to take favorable action on the appeal or, absent such action, to immediately forward the record of proceeding to the BIA within forty-five (45) days. See 8 C.F.R. § 1003.5(b).

**67.**    USCIS has failed to take favorable action on the appeal and has failed to forward the record of proceeding to the BIA within the time prescribed by regulation.

**68.**    USCIS's failure to act after the expiration of a mandatory regulatory deadline constitutes agency action unlawfully withheld and unreasonably delayed within the meaning of 5 U.S.C. § 706(1).

**69.**    As a direct result of USCIS's unlawful withholding of required agency action, Plaintiff has been deprived of the administrative appellate review expressly provided by regulation.

**70.**    Plaintiff is entitled to relief under 5 U.S.C. § 706(1) compelling USCIS to perform the action required by law.

## COUNT III – DECLARATORY JUDGMENT

*BIA Appellate Jurisdiction Over Approved I-130 Petitions*

**71.**    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

**72.**    An actual and justiciable controversy exists regarding whether the BIA has appellate jurisdiction under 8 C.F.R. § 1003.1(b)(5) to review decisions by DHS approving Form I-130, Petition for Alien Relative.

**73.**    Resolution of this purely legal question directly affects Plaintiff's pending administrative appeal and USCIS's obligation to transmit the record of proceeding to the BIA pursuant to 8 C.F.R. § 1003.5(b).

**74.**    The BIA is a component of the DOJ, and its appellate jurisdiction is defined by regulations promulgated and administered by the Attorney General of the United States, who exercises plenary authority over the BIA and EOIR.

**75.**    Accordingly, Defendants DOJ and Attorney General Pamela Bondi, in her official capacity, are proper and necessary parties to this Count because any declaration concerning the scope of the BIA's appellate jurisdiction necessarily binds the Attorney General and the DOJ, not DHS alone.

**76.**    Under the plain text of 8 C.F.R. § 1003.1(b)(5), the BIA has appellate jurisdiction over "[d]ecisions on petitions filed in accordance with section 204 of the Act." A determination approving a Form I-130 petition constitutes a "decision on a petition" within the meaning of 8 C.F.R. § 1003.1(b)(5).

**77.**    USCIS itself consistently treats both approvals and denials of Form I-130 petitions as "decisions," reflecting that each constitutes a final adjudicative action by the agency.

78.    An interpretation that excludes approved petitions from appellate review would permit immigration benefits conferred in violation of mandatory statutory bars to remain insulated from correction, frustrating Congress's enforcement scheme and rendering those statutory prohibitions ineffective.

79.    No statute or regulation limits the BIA's appellate jurisdiction under 8 C.F.R. § 1003.1(b)(5) to denials of Form I-130 petitions or otherwise excludes approved petitions from appellate review.

80.    These issues are ripe because USCIS's transmission-stage review under 8 C.F.R. § 1003.5(b) requires the agency to decide, as a gatekeeping matter, whether to process and transmit Plaintiff's appeal—including whether to treat it as untimely notwithstanding equitable tolling—before the Board can obtain the record.

81.    Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that the BIA has appellate jurisdiction under 8 C.F.R. § 1003.1(b)(5) to review approved Form I-130 petitions.

### COUNT IV – DECLARATORY JUDGMENT
*USCIS Is Subject to Appellate Oversight for Violations of INA § 204(c)*

82.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

83.    An actual and justiciable controversy exists regarding whether USCIS is subject to appellate oversight when it approves a Form I-130 petition in violation of the mandatory marriage-fraud bar set forth in INA § 204(c).

84.    INA § 204(c) provides that "no petition shall be approved" if the beneficiary has entered into, attempted to enter into, or conspired to enter into a marriage for the purpose of evading the immigration laws.

85.    The prohibition imposed by INA § 204(c) is categorical and non-discretionary and operates as a legal limitation on USCIS's authority to approve or maintain approval of a petition.

86.    USCIS does not possess authority to render its own determinations final and unreviewable where a mandatory statutory bar enacted by Congress is alleged to apply.

87.    The regulatory framework governing immigration adjudications vests appellate and supervisory authority in the BIA, acting under the direction and control of the Attorney General of the United States, to ensure that immigration benefits are not conferred contrary to law.

88.    Because the BIA is a component of the DOJ, and because the Attorney General exercises ultimate authority over the interpretation and enforcement of immigration adjudications through binding precedent and regulation, Defendants DOJ and Attorney General Pamela Bondi, in her official capacity, are proper and necessary parties to this Count.

89.    Interpreting the Immigration and Nationality Act or its implementing regulations to exempt USCIS approvals from appellate oversight for compliance with INA § 204(c) would permit USCIS to insulate its own violations of a mandatory statutory prohibition from any meaningful review.

90.    Such an interpretation would frustrate Congress's enforcement scheme by allowing immigration benefits conferred in violation of INA § 204(c) to remain effective by virtue of agency self-insulation, contrary to the structure of the Act.

91.    Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that USCIS is subject to appellate oversight for violations of INA § 204(c), including review of approved Form I-130 petitions by the Board of Immigration Appeals.

### COUNT V – DECLARATORY JUDGMENT

*Ultra Vires Definition of Marriage Fraud Under INA § 204(c)*

**92.**    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

**93.**    An actual and justiciable controversy exists regarding the proper legal definition of marriage fraud under INA § 204(c) and whether agency interpretations imposing requirements beyond the statutory text are lawful.

**94.**    INA § 204(c) provides that "no petition shall be approved" if the beneficiary has entered into, attempted to enter into, or conspired to enter into a marriage for the purpose of evading the immigration laws.

**95.**    The statutory text does not require proof that immigration evasion was the beneficiary's primary or sole purpose in entering the marriage, nor does it require proof that the parties lacked intent to establish a life together.

**96.**    Notwithstanding the statute's plain language, the BIA, acting under the authority of the Attorney General, has interpreted INA § 204(c) in a binding precedent decision to require proof that immigration evasion was the "primary purpose" of the marriage or that the parties did not intend to "establish a life together." *See Matter of P. Singh*, 27 I&N Dec. 598, 601 (BIA 2019).

**97.**    *Matter of P. Singh* constitutes an exercise of the Attorney General's delegated authority to issue binding interpretations of the INA through the BIA, and is therefore attributable to the DOJ and the Attorney General, not to DHS or USCIS.

**98.**    These extra-textual requirements are not found in INA § 204(c), derive from pre-1986 precedent predating the Immigration Marriage Fraud Amendments of 1986, and conflict with Congress's subsequent expansion of the marriage-fraud bar.

**99.** Federal courts interpreting materially identical language in the criminal marriage-fraud statute, 8 U.S.C. § 1325(c), have rejected judicially created tests requiring proof that the parties intended to "establish a life together" or that immigration evasion was the dominant purpose of the marriage.

**100.** In the Fifth Circuit, binding precedent holds that the "establish a life together" formulation improperly reads an element into the statute that Congress did not include. *United States v. Ortiz-Mendez*, 634 F.3d 837, 840 (5th Cir. 2011); *see also United States v. Ongaga*, 820 F.3d 152, 160 (5th Cir. 2016).

**101.** These decisions confirm that the statutory inquiry is whether the marriage was entered into for the purpose of evading the immigration laws, regardless of mixed motives or collateral intentions.

**102.** USCIS is legally bound to apply BIA precedent issued under the Attorney General's authority when adjudicating and transmitting Plaintiff's appeal, and therefore lacks authority to disregard these ultra vires interpretations absent judicial intervention.

**103.** Because the challenged legal standard originates from Attorney General–controlled precedent and is enforced through the DOJ's adjudicatory apparatus, Defendants DOJ and Attorney General Pamela Bondi, in her official capacity, are proper and necessary parties to this Count.

**104.** Because USCIS must apply this unlawful standard when processing Plaintiff's appeal, declaratory relief is necessary to resolve this purely legal question before the agency applies an interpretation that exceeds statutory authority.

**105.** Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the APA requires courts to exercise independent judgment in determining whether an agency

has acted within its statutory authority. Courts may not defer to an agency's interpretation of a statute merely because the statute is ambiguous.

106.    Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that the "primary purpose" and "establish a life together" tests are ultra vires, unlawful, and may not be used to limit the application of INA § 204(c).

### COUNT VI – DECLARATORY JUDGMENT
*Unlawful Heightened Evidentiary Standard Under INA § 204(c)*

107.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

108.    An actual and justiciable controversy exists regarding the evidentiary standard governing determinations under INA § 204(c), including whether the DOJ, acting through the BIA and the Attorney General, may impose a heightened standard of proof not prescribed by Congress.

109.    INA § 204(c) imposes a mandatory bar on the approval of visa petitions where the beneficiary has entered into, attempted to enter into, or conspired to enter into a marriage for the purpose of evading the immigration laws, but the statute does not prescribe any heightened evidentiary standard for making that determination.

110.    Where Congress is silent as to the standard of proof in an administrative adjudication, the default evidentiary standard is a preponderance of the evidence. *Steadman v. SEC*, 450 U.S. 91, 102 (1981); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 389–90 (1983).

111.    Notwithstanding Congress's silence, the DOJ, acting through regulations promulgated by the Attorney General and binding precedent decisions issued by the BIA, has imposed a heightened "substantial and probative evidence" standard for

determinations under INA § 204(c). *See* 8 C.F.R. § 204.2(a)(1)(ii); *Matter of P. Singh*, 27 I&N Dec. 598, 607 (BIA 2019).

112.    The imposition of this heightened evidentiary standard constitutes an exercise of the Attorney General's delegated authority over immigration adjudications and is attributable to the DOJ and the Attorney General, not to DHS or USCIS.

113.    That heightened standard is not grounded in the text of INA § 204(c), was not authorized by Congress, and impermissibly departs from the default evidentiary rule applicable to civil and administrative proceedings.

114.    Congress has expressly imposed heightened standards of proof elsewhere in the Immigration and Nationality Act when it intended to do so, confirming that its silence in INA § 204(c) reflects an intentional decision not to depart from the preponderance-of-the-evidence standard.

115.    The imposition of a heightened evidentiary burden unlawfully narrows the scope of a mandatory statutory bar enacted to prevent and deter marriage fraud and exceeds the agency's delegated authority.

116.    USCIS is legally bound to apply BIA precedent issued under the Attorney General's authority when adjudicating and transmitting Plaintiff's appeal, and absent judicial intervention will apply this unlawful heightened standard to Plaintiff's case.

117.    Because the challenged evidentiary standard originates from Attorney General–controlled regulations and precedent, and is enforced through the DOJ's adjudicatory framework, Defendants DOJ and Attorney General Pamela Bondi, in her official capacity, are proper and necessary parties to this Count.

118.    Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the APA requires courts to exercise independent judgment in determining whether an agency

has acted within its statutory authority. Courts may not defer to an agency's interpretation of a statute merely because the statute is ambiguous.

119.    Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that the proper evidentiary standard applicable to determinations under INA § 204(c) is a preponderance of the evidence, and that any heightened "substantial and probative evidence" standard imposed by regulation or agency precedent is unlawful and ultra vires.

## COUNT VII – DECLARATORY JUDGMENT
*Equitable Tolling Applies to Appeals from DHS Decisions to the BIA*

120.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

121.    An actual and justiciable controversy exists regarding whether the thirty-day filing deadline set forth in 8 C.F.R. § 1003.3(a)(2) for appeals from DHS decisions to the BIA is subject to equitable tolling.

122.    The filing deadline in 8 C.F.R. § 1003.3(a)(2) is a regulatory claim-processing rule, not a jurisdictional limitation, and does not purport to restrict the adjudicatory authority of the BIA.

123.    Non-jurisdictional claim-processing rules are presumptively subject to equitable tolling unless Congress has clearly stated otherwise. *United States v. Kwai Fun Wong*, 575 U.S. 402, 409–10 (2015).

124.    Neither the INA nor its implementing regulations clearly foreclose equitable tolling of the appeal deadline applicable to appeals from DHS decisions.

125.    The Fifth Circuit has held that comparable immigration filing deadlines are non-jurisdictional and subject to equitable tolling, including deadlines governing appeals

and motions before the Board. *Boch-Saban v. Garland*, 30 F.4th 411, 413–14 (5th Cir. 2022); *Lugo-Resendez v. Lynch*, 831 F.3d 337, 343 (5th Cir. 2016).

**126.**    The BIA, acting under the authority of the Attorney General, has likewise recognized that equitable tolling applies within the immigration adjudicatory framework, including to appeal deadlines, where a party demonstrates diligence and an extraordinary circumstance preventing timely filing. *Matter of Morales-Morales*, 28 I&N Dec. 708, 714–16 (BIA 2023).

**127.**    Nothing in law or regulation supports treating appeals from DHS decisions differently from other Board-governed filing deadlines for purposes of equitable tolling.

**128.**    Because the interpretation and application of equitable tolling within the immigration system is governed by Attorney General–controlled precedent and adjudicatory rules, USCIS lacks independent authority to definitively resolve this legal question.

**129.**    Absent declaratory relief, there is a substantial risk that USCIS will reject, disregard, or fail to transmit Plaintiff's appeal on timeliness grounds without consideration of equitable tolling, thereby depriving Plaintiff of administrative appellate review based solely on fraud-induced delay.

**130.**    Because USCIS is legally bound to apply BIA precedent issued under the Attorney General's authority when adjudicating and transmitting Plaintiff's appeal, judicial clarification is necessary to resolve this purely legal issue before the agency applies an unlawful timeliness rule.

**131.**    As the entity responsible for promulgating regulations governing BIA appellate procedure and issuing binding precedent on equitable tolling, the United States DOJ

and the Attorney General of the United States, in her official capacity, are proper and necessary defendants to this Count.

**132.** Plaintiff is entitled to a declaratory judgment under 28 U.S.C. § 2201 that the filing deadline set forth in 8 C.F.R. § 1003.3(a)(2) for appeals from DHS decisions to the BIA is a non-jurisdictional claim-processing rule subject to equitable tolling where the governing legal standard is satisfied.

### COUNT VIII – ADMINISTRATIVE PROCEDURE ACT
*Agency Action Contrary to Law and In Excess of Statutory Authority*

**133.** Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

**134.** The APA requires a reviewing court to "hold unlawful and set aside agency action" that is "not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (C), (D).

**135.** Plaintiff has a pending Form EOIR-29 administrative appeal challenging the approval of a Form I-130 petition on the ground that INA § 204(c) bars approval where a beneficiary has entered into, attempted to enter into, or conspired to enter into a marriage for the purpose of evading the immigration laws.

**136.** In adjudicating and transmitting Plaintiff's appeal, USCIS is legally bound to apply binding precedent decisions of the Board of Immigration Appeals issued under the authority of the Attorney General, as well as regulations promulgated under that authority. The challenged standards are being applied now at USCIS's transmission-stage review under 8 C.F.R. § 1003.5(b), including in the agency's determination whether to process and forward Plaintiff's appeal, and thus are presently operative "as applied" to Plaintiff.

137.    As set forth above, the BIA and DOJ have adopted and enforced extra-textual limitations on INA § 204(c), including requirements that immigration evasion be the "primary purpose" of the marriage or that the parties lacked intent to "establish a life together," which are not contained in the statutory text.

138.    The DOJ, acting through regulation and precedent, has also imposed a heightened "substantial and probative evidence" evidentiary standard for determinations under INA § 204(c), despite Congress's silence as to any heightened burden of proof.

139.    Absent judicial intervention, Defendants will apply these extra-statutory standards to Plaintiff's pending administrative appeal because USCIS is bound by BIA precedent decisions under 8 C.F.R. § 1003.1(d)(1), and those standards will govern the disposition of his claim.

140.    The imposition and application of requirements not found in the text of INA § 204(c), including the "primary purpose" and "establish a life together" formulations, are contrary to law and exceed the authority delegated by Congress.

141.    The imposition and application of a heightened "substantial and probative evidence" standard likewise are contrary to law and in excess of statutory authority, as Congress did not prescribe such a burden in INA § 204(c), and the default rule in civil and administrative proceedings is proof by a preponderance of the evidence.

142.    Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the APA requires courts to exercise independent judgment in determining whether an agency has acted within its statutory authority. Courts may not defer to an agency's interpretation of a statute merely because the statute is ambiguous.

143.    To the extent Defendants apply or threaten to apply these unlawful standards in reviewing, transmitting, or adjudicating Plaintiff's appeal, such action constitutes agency action within the meaning of 5 U.S.C. § 551(13) that is reviewable under the APA.

144.    The continued enforcement of these standards in Plaintiff's case will cause ongoing and irreparable harm by unlawfully narrowing the scope of a mandatory statutory bar enacted to protect U.S. citizens and by materially affecting the outcome of Plaintiff's pending administrative appeal.

145.    Plaintiff has no adequate remedy at law to prevent the application of these unlawful standards in his pending administrative appeal.

146.    Pursuant to 5 U.S.C. § 706(2), Plaintiff is entitled to an order holding unlawful and setting aside, as applied to his pending administrative appeal, (a) the "primary purpose" and "establish a life together" limitations on INA § 204(c), and (b) any heightened "substantial and probative evidence" standard inconsistent with the preponderance-of-the-evidence standard.

147.    Plaintiff is further entitled to appropriate declaratory and injunctive relief requiring Defendants to process, transmit, and adjudicate his Form EOIR-29 appeal under the correct statutory standard and evidentiary burden consistent with INA § 204(c) and governing law.

### COUNT IX – VIOLATION OF THE FIFTH AMENDMENT
*Procedural Due Process – Denial of Access to Administrative Review*

148.    Plaintiff re-alleges and incorporates by reference the preceding paragraphs of this Complaint as if fully set forth herein.

149.    The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law.

150.    Execution of Form I-864, Affidavit of Support, creates a legally binding and judicially enforceable financial obligation imposed as a condition of federal approval of a family-based immigrant petition. That obligation exposes Plaintiff to substantial and long-term financial liability.

151.    Plaintiff therefore possesses a protected property interest in avoiding the continued operation of a federal approval that Plaintiff alleges is unlawful under INA § 204(c) and that gives rise to, or sustains, ongoing I-864-based financial exposure and a present risk of enforcement.

152.    Although enforcement of the I-864 may be sought by the sponsored immigrant in a separate civil action, Plaintiff's exposure to that enforcement is a direct product of the federal legal regime that conditioned immigration approval on execution of the I-864 and treats that undertaking as continuing until a statutory termination event occurs. By continuing to give operative effect to the challenged approval while simultaneously blocking Plaintiff's access to the administrative review mechanism designed to test the legality of that approval, Defendants prolong the period during which the I-864 obligation may be asserted against Plaintiff and deny him meaningful process to contest the predicate government action that triggered his ongoing exposure.

153.    Federal regulations establish an administrative appellate process for review of DHS decisions on visa petitions, including review by the Board of Immigration Appeals pursuant to 8 C.F.R. §§ 1003.1(b)(5), 1003.3, and 1003.5(b).

154.    Under 8 C.F.R. § 1003.5(b), upon receipt of a properly filed Form EOIR-29 appeal, DHS "shall" review the appeal and, absent favorable action within forty-five (45) days, "shall" immediately forward the record of proceeding to the BIA.

155.    Plaintiff properly filed a Form EOIR-29 appeal invoking equitable tolling and challenging the approval of the Form I-130 petition based on newly discovered evidence implicating INA § 204(c).

156.    By refusing to forward the record of proceeding to the BIA after expiration of the mandatory regulatory deadline, Defendants have prevented Plaintiff from accessing the only administrative review mechanism established by regulation to test the legality of the approval that sustains his ongoing I-864 exposure.

157.    The continued withholding of Plaintiff's appeal deprives him of meaningful process to challenge the approval that gives rise to ongoing financial liability and materially affects his legal rights.

158.    The relief requested here redresses Plaintiff's due-process injury by restoring access to the only administrative review process provided by regulation to determine whether the approval that triggered Plaintiff's ongoing I-864 exposure was legally permissible in the first instance.

159.    Defendants' refusal to provide access to the established administrative appellate process constitutes a deprivation of property without due process of law in violation of the Fifth Amendment.

160.    Plaintiff has no adequate alternative remedy to obtain access to the administrative review mechanism or to secure consideration of whether the approval sustaining his I-864 obligations complies with INA § 204(c), absent judicial intervention.

161.    Plaintiff is therefore entitled to declaratory and injunctive relief requiring Defendants to provide constitutionally adequate process by complying with 8 C.F.R. § 1003.5(b) and transmitting his appeal to the BIA for review.

## VI.  REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and grant the following relief:

A.    Assume and exercise subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1361, 5 U.S.C. §§ 702 and 706, and 28 U.S.C. §§ 2201–2202;

B.    Declare that USCIS has a clear, ministerial, and nondiscretionary duty under 8 C.F.R. § 1003.5(b), upon receipt of a properly filed Form EOIR-29 appeal, to review the appeal and, absent favorable action within forty-five (45) days, to immediately forward the record of proceeding to the BIA;

C.    Declare that USCIS's failure to forward the record of proceeding as required by 8 C.F.R. § 1003.5(b) constitutes agency action unlawfully withheld and unreasonably delayed within the meaning of 5 U.S.C. §§ 555(b) and 706(1);

D.    Compel, pursuant to 28 U.S.C. § 1361 and/or 5 U.S.C. § 706(1), USCIS to immediately forward the record of proceeding to the BIA;

E.    Declare that the BIA has appellate jurisdiction under 8 C.F.R. § 1003.1(b)(5) to review DHS decisions approving Form I-130, Petition for Alien Relative;

F.    Declare that USCIS is subject to appellate oversight for compliance with INA § 204(c), including review of approved Form I-130 petitions, and may not insulate approvals from correction where a mandatory statutory bar is alleged to apply;

G.    Declare that the "primary purpose" and "establish a life together" formulations are ultra vires, unlawful limitations on INA § 204(c), and may not be used to narrow the statutory phrase "for the purpose of evading the immigration laws";

**H.**    Declare that the proper evidentiary standard applicable to determinations under INA § 204(c) is a preponderance of the evidence, and that any heightened "substantial and probative evidence" standard imposed by regulation or agency precedent is unlawful and ultra vires;

**I.**    Declare that the filing deadline set forth in 8 C.F.R. § 1003.3(a)(2) for appeals from DHS decisions to the BIA is a non-jurisdictional claim-processing rule subject to equitable tolling where the governing legal standard is satisfied;

**J.**    Enjoin Defendants, their officers, agents, servants, employees, and all persons acting in concert with them from:

      1.    Applying the "primary purpose," "establish a life together," or any heightened evidentiary standard inconsistent with INA § 204(c) to Plaintiff's pending administrative appeal; and

      2.    Refusing to transmit, process, or consider Plaintiff's Form EOIR-29 appeal based on timeliness grounds without applying equitable tolling consistent with governing law;

**K.**    Award Plaintiff his costs and reasonable attorneys' fees to the extent authorized by law, including under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

**L.**    Grant such other and further relief as the Court deems just and proper.

## VII.  EXHIBITS

**Exhibit A** – Form I-130 Approval Notice (IOE9238090888)

**Exhibit B** – EOIR-29 Receipt Notice (MSC2526650017)

**Dated:** February 11, 2026                    **Respectfully Submitted**,


**Codias Law**
3101 FM 856 N
Troup, TX 75789
Phone: (512) 537-7103
Email: cody@codiaslaw.com
Web: www.codiaslaw.com


By: /s/ Cody M. Brown
**Cody M. Brown**
MN Bar # 0351477
Fed. No. 3938824
Email: cody@codiaslaw.com
*Attorney-in-Charge*